1
2
3
4
5

## UNITED STATES DISTRICT COURT

6

## DISTRICT OF NEVADA

7

8  TERESA R. BURWELL,                    )
                                        )
9                    Plaintiff,         )      Case No. 2:11-cv-02026-LRH-GWF
                                        )
10 vs.                                  )      **ORDER**
                                        )
11                                      )      Screening of Complaint (#1-1)
   CITY OF LAS VEGAS,                   )
12                                      )
                     Defendants.        )
13 _____  )

14        This matter comes before the Court on the screening of Plaintiff's Complaint (#1-1), filed

15 on December 16, 2011.  On December 21, 2011, the Court granted Plaintiff's Application to

16 Proceed in Forma Pauperis (#1) and set a status hearing. (See #2.)  On February 2, 2012, the Court

17 conducted a status hearing on this matter.

18                              **BACKGROUND**

19        Plaintiff brings this suit against the City of Las Vegas Marshall Officers David Compson

20 and C. Fryes alleging a violation of her constitutional rights.  Plaintiff alleges that on January 12,

21 2007, David Compson followed Plaintiff and her children for approximately two hours in his

22 vehicle. As soon as Plaintiff pulled her car over, Plaintiff alleges that Compson began harassing

23 her.  Plaintiff claims that she was assaulted, harassed and arrested by white officers based solely on

24 her race.  Plaintiff further states that she was charged with failure to change her address.  Plaintiff

25 also alleges that the Defendants provided false testimony at her trial that took place on December

26 17, 2008 to cover up their conduct. Plaintiff claims that the Compson and  Fryes falsely stated that

27 the Plaintiff was uncooperative and denied ever receiving Plaintiff's driver's license.

28 . . .

In Count I, Plaintiff alleges that she was assaulted, harassed and arrested in violation of her rights.  Based on the above facts, Plaintiff claims that she was racially profiled and arrested for no legitimate reason.  Plaintiff claims that her civil rights and liberties were violated and she did not receive a fair trial because of the Defendants' fabrications.  Plaintiff further claims that the Defendants' actions were covered up by their all white superior officers.  In Count II, Plaintiff alleges a violation of her constitutional right to live peaceably and to not be injured and harassed. Plaintiff alleges that Compson and Fryes assaulted and harassed her in violation of her civil liberties.

Finally, in Count III, Plaintiff alleges that Compson and Fryes committed perjury during her trial on December 17, 2008.  Plaintiff alleges that Compson claimed that he never received Plaintiff's identification when she was pulled over by the officers.  Plaintiff requests damages in the amount of $50,000.00 for actual and punitive damages.  Plaintiff claims that she was denied employment in the early part of 2008 due to her ongoing court proceeding.  Plaintiff further alleges that her left arm was injured, her children were traumatized and she suffered emotional damages.

## DISCUSSION

**II.     Screening the Complaint**

Upon granting a request to proceed *in forma pauperis*, a court must additionally screen a complaint pursuant to 28 U.S.C. § 1915(e).  Specifically, federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief  may be granted, or seeks monetary relief from a Defendant/Third Party Plaintiff who is immune from such relief.  28 U.S.C. § 1915(e)(2).  A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted "if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief."  *Buckey v. Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992).  A complaint may be dismissed as frivolous if it is premised on a nonexistent legal interest or delusional factual scenario.  *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989).  Moreover, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them."  *Denton v.*

1    *Hernandez*, 504 U.S. 25, 33 (1992).  When a court dismisses a complaint under § 1915(e), the

2    plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies,

3    unless it is clear from the face of the complaint that the deficiencies could not be cured by

4    amendment.  *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

5    **I.**    **Excessive Force**

6           In both Counts I and II, Plaintiff alleges that she was harassed and assaulted by Compson

7    and Fryes in violation of her civil liberties.  Plaintiff is conceivably alleging a claim of excessive

8    force in violation of her Fourth Amendment right.  All claims that law enforcement officers used

9    excessive force, either deadly or non-deadly, in the course of an arrest, investigatory stop, or other

10   seizure of a citizen are to be analyzed under the Fourth Amendment and its standard of objective

11   reasonableness. *See Long v. City and County of Honolulu*, 511 F.3d 901, 906 (9th Cir.2007); *see*

12   *also Graham v. Connor*, 490 U.S. 386, 395, (1989).  The pertinent question in an excessive force

13   case is whether the use of force was "objectively reasonable in light of the facts and circumstances

14   confronting [the officers], without regard to their underlying intent or motivation." *Graham*, 490

15   U.S. at 397*; Blankenhorn v. City of Orange*, 485 F.3d 463, 477 (9th Cir.2007).

16         The analysis of whether a specific use of force was reasonable "requires a careful balancing

17   of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

18   countervailing government interests at stake." *Graham*, 490 U.S. at 396; *Blankenhorn*, 485 F.3d at

19   477; *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (9th Cir.2007). "We first assess the quantum

20   of force used to arrest [the plaintiff]" and then "measure the governmental interests at stake by

21   evaluating a range of factors." *Davis*, 478 F.3d at 1054. Factors that are considered in assessing the

22   government interests at stake include, but are not limited to, "the severity of the crime at issue,

23   whether the suspect poses an immediate threat to the safety of the officers or others, and whether he

24   is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396;

25   *Blankenhorn*, 485 F.3d at 477; *Davis*, 478 F.3d at 1054.  Further, where it is or should be apparent

26   that an individual is emotionally or mentally unstable, that is a factor that must be considered in

27   determining the reasonableness of the force employed. *See Drummond*, 343 F.3d at 1058. "In some

28   cases ..., the availability of alternative methods of capturing or subduing a suspect may be a factor

1   to consider." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir.2005).  However, police officers

2   "are not required to use the least intrusive degree of force possible" as long as the force actually

3   used was reasonable. *Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir.1994); *see Gregory*

4   *v. County of Maui*, 523 F.3d 1103, 1107 (9th Cir.2008).

5        Reasonableness "must be judged from the perspective of a reasonable officer on the scene,

6   rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *Drummond*, 343 F.3d at

7   1058. "The calculus of reasonableness must embody allowance for the fact that police officers are

8   often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly

9   evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at

10  396–97; *Drummond*, 343 F.3d at 1058.  Since "[n]ot every push or shove, even if it may seem

11  unnecessary in the peace of the judge's chambers, ... violates the Fourth Amendment," *Graham*,

12  490 U.S. at 396, "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes

13  excessive force." *Blankenhorn*, 485 F.3d at 477. "Force is excessive when it is greater than is

14  reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir.2002). When the

15  circumstances show that there is no need for force, any force used is constitutionally unreasonable.

16  *See Fontana v. Haskin,* 262 F.3d 871, 880 (9th Cir.2001); *see also Motley v. Parks*, 432 F.3d 1072,

17  1089 (9th Cir.2005).

18       In screening Plaintiff's claim of excessive force, the Court takes as true all allegations of

19  material fact stated in the complaint, and the Court construes them in the light most favorable to the

20  plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir.1996).  Here, Plaintiff alleges that

21  the officers grabbed her out of her vehicle, drug her to the police vehicle and banged her against the

22  vehicle.  She further claims that when she told the officers that they were harassing her, they

23  twisted her arms and almost broke them.  During this incident, Plaintiff claims that she was

24  cooperative with the officers and she did nothing to provoke the officers to assault and harass her.

25  Taking all the allegations as true and construing them in the light most favorable to the Plaintiff,

26  Plaintiff may have a claim for excessive force against Defendants.

27  **II.   Heck Doctrine**

28       In her complaint, Plaintiff alleges that the Defendants failed to tell the truth when they were

4

1   called to testify at her trial.  Plaintiff additionally claims that the Defendant's lies were covered up

2   by their superiors.  The circumstances surrounding Plaintiff's trial are unclear.   Plaintiff states that

3   she was charged with failure to change her address, but fails to state if that was her only charge,

4   whether she was convicted of the charge(s),  and whether that conviction still stands.   To the extent

5   that Plaintiff's claim that the officers perjured themself on the witness stand, amounts to a review

6   of the state court's ruling, this Court lacks jurisdiction to hear such a claim.

7         United States District Courts do not have jurisdiction to hear appeals from state trial court

8   rulings. *See, e.g., Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Bianchi v. Rylaarsdam*, 334

9   F.3d 895, 898 (9th Cir.2003). The *Rooker–Feldman* doctrine prevents the Court from considering

10  claims that amount to a review of the state court's ruling. The *Rooker–Feldman* doctrine stems from

11  two cases recognizing that under Article III of the Constitution, Congress controls the jurisdiction

12  of the "inferior Courts" it creates. *See* U.S. Const. art. III, § 1.  In both of those cases, parties who

13  had lost in state court attempted to invoke the jurisdiction of the United States District Court to

14  appeal the state-court rulings. In both cases, the federal statutes applicable at the respective times

15  did not give the United States District Court appellate jurisdiction over the respective controversies.

16  *See D.C. Ct.App. v. Feldman*, 460 U.S. 462, 476–79 (1983) (holding that denial of admission to

17  practice law was a judicial matter, not an administrative one, making any federal jurisdiction

18  appellate, not original, and therefore the avenue for review of a ruling of the D.C. Court of Appeals

19  was not to the United States District Court, but to the United States Supreme Court); *Rooker v.*

20  *Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923) (holding that under the statutes in place at the

21  time, an appeal from the Indiana Supreme Court could be taken only to the United States Supreme

22  Court, not to the United States District Court, because the jurisdiction of the latter court was strictly

23  original).

24        Presumably, Congress could create appellate jurisdiction over state-court rulings in the

25  United States District Court.  The question in this case, as it was in *Rooker* and *Feldman*, is

26  whether Congress has done so.  It has not.  Plaintiff brings the case under § 1983, but this Court has

27  no statutory jurisdiction to entertain de facto appeals of state trial court rulings any more than it has

28  jurisdiction to entertain formal appeals of such rulings. *See, e.g., Reusser v. Wachovia Bank, N.A.*,

525 F.3d 855, 860 (9th Cir.2008). It appears the issue here (whether Plaintiff's conviction was proper if the police violated Plaintiff's rights by fabricating their testimony) must be litigated through the state courts because the issue is "inextricably intertwined" with the state-court decision. *See Feldman*, 460 U.S. at 483 n. 16 (stating "If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do."); *Reusser*, 525 F.3d at 859.

From the limited information provided to the Court, it appears Plaintiff may be trying to attack her state court conviction. Under such circumstances, the Court must dismiss Plaintiff's case for lack of jurisdiction. The Court however does not have enough facts to determine whether Plaintiff's case should be dismissed for lack of jurisdiction. The Plaintiff must therefore provide additional facts concerning Plaintiff's underlying trial. During the status hearing conducted on February 2, 2012, Plaintiff indicated that she was convicted of certain offenses, but other offenses were dismissed. If Plaintiff chooses to amend her complaint, Plaintiff must clearly outline the charges that she was convicted of, the charges that were dismissed, and which charges she is claiming are the basis of this civil rights complaint. The Court will therefore grant Plaintiff leave to amend her complaint to provide additional facts surrounding her claim that the officers fabricated their testimony during trial.

**III. Racial Profiling - Fourteenth Amendment Claim**

Plaintiff further alleges that the true reason behind the officer's stop and their conduct toward her was her race. A cause of action based on racial profiling is brought under the equal protection clause of the Fourteenth Amendment. In order to bring an equal protection claim based on racial profiling under 42 U.S.C. § 1983, Plaintiff must show that the officer's conduct (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose. *Bradley v. U.S.*, 299 F.3d 197, 205–06 (3d Cir.2002). To demonstrate a discriminatory effect, Plaintiff must prove that he "is a member of a protected class and that [he] was treated differently from similarly situated individuals in an unprotected class." *Id.* at 206.

1   Plaintiff has failed to provide the Court will her race and/or ethnicity and failed to allege

2   that she is a member of a protected class.  *See, e.g., Waiters v. Hudson County Correctional Center,*

3   *Civ. No. 07–421*, 2010 WL 1838468, at *4 (D.N.J. May 05, 2010) (holding that because the

4   plaintiff was of African–American descent, she was a "member of a protected class by virtue of her

5   race and of her ancestry").  However, mere invocation of the phrase "racial profiling" without

6   more, is simply a legal conclusion, not a factual basis for a claim. The Court must disregard such

7   legal conclusions and examine any facts alleged by Plaintiff that would form a plausible factual

8   basis for that conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  The only relevant factual

9   allegations made by Plaintiff are that she is colored, she was stopped by white officers because of

10  her color, and the officer's white supervisors covered for the officers.  Without more, this is an

11  insufficient factual basis for the claim, because there is nothing in the pleadings to suggest that

12  similarly-situated white drivers are not subject to improper investigative stops, or that this

13  particular improper stop was a result of racial targeting. *See, e.g., Pace Resources, Inc. v.*

14  *Shrewsbury Tp.*, 808 F.2d 1023, 1026 (3d Cir.1987) (holding that conclusory allegations regarding

15  similarly-situated individuals are insufficient to state a claim); *Fisher v. Vassar College*, 70 F.3d

16  1420, 1439 (2d Cir.1995) (noting that a plaintiff's "sense of being discriminated against" is

17  insufficient to demonstrate discrimination).

18      Plaintiff claims that the officers followed her and pulled her over because she was black and

19  because she had factory tint on her windows.  These facts, without more, are insufficient to support

20  an equal protection claim under the Fourteenth Amendment.  Plaintiff needs to state her race and/or

21  ethnicity and offer any further evidence that she was targeted based on her race.  The Court will

22  therefore grant Plaintiff leave to amend her complaint to allege facts sufficient to bring an equal

23  protection claim.

24      Based on the above discussion, the Court will grant Plaintiff leave to amend her complaint.

25  The Court instructs the Plaintiff that if she decides to amend her complaint in accordance with the

26  above discussion, Plaintiff must submit a complete complaint containing all the causes of actions

27  she wishes to proceed upon.  So, although the Court found that Plaintiff may have a claim for

28  excessive force upon the allegations contained in Plaintiff's complaint, Plaintiff must include all

the allegations of excessive force in her amended complaint as well.  After having read this Screening Order, Plaintiff may also add allegations in her amended complaint that she believes will strengthen her case.  Any amended complaint submitted to the Court however must be complete in itself and cannot incorporate causes of actions from documents that were previously filed.  Accordingly,

**IT IS HEREBY ORDERED** that the Plaintiff's Complaint (#1-1) is **dismissed** without prejudice with leave to amend.  Plaintiff shall have until **Monday, March 5, 2012**,  to correct the noted deficiencies and file a complete amended complaint.

DATED this 2nd day of February, 2012.

_George Foley Jr._
_____
GEORGE FOLEY, JR.
United States Magistrate Judge

8